UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80048-MARRA/MCCABE

UNITED STATES OF AMERICA

vs.

PALLAVI ANN LEMON,

      Defendant.
_____/

## PLEA AGREEMENT

The United States of America and Pallavi Ann Lemon (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count One of the Indictment, which charges the defendant with Conspiracy to Encourage and Induce an Alien to Enter the United States, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and (a)(1)(A)(V)(I), and Count Two of the Indictment, which charges the defendant with Alien Smuggling for Pecuniary Gain, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii). The defendant agrees that she is, in fact, guilty of the offenses.

2. The United States agrees to seek dismissal of Counts Three through Nine of the Indictment, as to this defendant, after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines

1

will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed. The defendant is also aware that the guidelines do not provide for parole.

4. The defendant understands and acknowledges that as to Count One, the Court may impose a statutory maximum term of ten (10) years' imprisonment, followed by a maximum term of three (3) years of supervised release, and a maximum fine of $250,000. As to Count Two, the Court must impose a mandatory-minimum term of three (3) years' imprisonment up to a statutory maximum term of ten (10) years' imprisonment, followed by a maximum term of three (3) years of supervised release, and a maximum fine of $250,000.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100 per count will be imposed on the defendant, for a total of $200. The defendant agrees that any

special assessment imposed shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

7. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

8. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If, at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits

3

any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because the defendant is pleading guilty to the offense of alien smuggling, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

10. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously

acknowledged above, that the defendant may not withdraw the defendant's plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

11. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property constituting, or derived from, any proceeds obtained, directly or indirectly, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense, pursuant to Title 21, United States Code, Section 853. In addition, the defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).

12. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

13. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title,

consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

14. The defendant acknowledges that she has fully discussed the matters of this plea agreement and his guilty plea pursuant thereto with his attorney, and that his attorney has answered each of his questions about the strength of the government's case as well as the following rights: to go to trial, to cross-examine the government's witnesses, to testify in his own behalf, to not be compelled to provide self-incriminating testimony, to call witnesses for the defense, and to appeal any adverse verdict that may result from a trial. The defendant further acknowledges that he is fully satisfied with the representation provided by his attorney.

15. This is the entire agreement and understanding between the United States and the defendant. There are no other promises, agreements, or understandings between the parties.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 4/1/25    By: _____
                    BRIAN RALSTON
                    ASSISTANT UNITED STATES ATTORNEY

Date: 3/19/25   By: _____
                    JEFFREY GARLAND
                    ATTORNEY FOR DEFENDANT

Date: 3/19/25   By: _____
                    PALLAVI ANN LEMON
                    DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80048-MARRA/MCCABE

UNITED STATES OF AMERICA

vs.

PALLAVI ANN LEMON,

        Defendant.

_____/

### FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

The United States of America and Defendant Pallavi Ann Lemon, (hereinafter "Defendant") agree that had this case proceeded to trial, the United States would have proven the following elements and facts beyond a reasonable doubt as to Count One of the Indictment, which charges the defendant with Conspiracy to Encourage and Induce an Alien to Enter the United States, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and (a)(1)(A)(V)(I), and Count Two of the Indictment, which charges the defendant with Alien Smuggling for Pecuniary Gain, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii).

### Count 1: Conspiracy to Encourage and Induce an Alien to Enter the United States

#### Elements

**First:**     The defendant and one or more persons in some way agreed to try to accomplish a shared and unlawful plan;

**Second:** The defendant knew the unlawful purpose of the plan and willfully joined it; and

**Third:**    The object of the conspiracy was to encourage and induce an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law.

## Count 2: Bring an Alien into the United States for Pecuniary Gain

### Elements

**First**: The defendant brought an alien, J.T.C, into the United States,

**Second**: The alien, J.T.C., was an alien;

**Third**: The defendant knew the alien, J.T.C., was an alien;

**Fourth**: The entry was not made at a designated port of entry; and

**Fifth**: The defendant committed the offense for commercial advantage or private financial gain.

### Facts

1. On March 30, 2024, the Palm Beach County Sheriff's Office (PBSO), utilizing the Coastal Security Radar System, observed a vessel track traveling west approximately 20 miles east of the Lake Worth Inlet. PBSO continuously monitored the vessel, and it maintained a westbound course towards the Lake Worth Inlet. At approximately 7:48 p.m., PBSO, utilizing video surveillance, observed the vessel arrive at the docks at Phil Foster Park in Riviera Beach, Florida. PBSO observed co-defendants Reko Curry ("Curry") and Gruz Simms ("Simms") operate the vessel with four other males onboard.

2. Once at the docks, the four males exited the vessel and were picked up by the defendant who was driving a black Mitsubishi. As the four males exited the vessel, a forward hatch on the vessel was opened from inside the vessel by an individual other than Curry or Simms. At approximately 7:52 p.m., a black Chevy Silverado pick-up truck, owned and operated by co-defendant Shuvalo Roberts ("Roberts"), with a trailer attached backed down the boat ramp and Simms hooked the vessel up to the trailer. At approximately 7:54 p.m., Curry and Simms entered the rear passenger seat of the Robert's vehicle, at which point the defendant and Roberts departed Phil Foster Park in their respective vehicles.

3. At approximately 8:19 p.m., Robert's vehicle was seen on Haverhill Road in West Palm Beach, Florida and a PBSO deputy conducted a traffic stop. Roberts was identified as the driver of the vehicle, and Curry and Simms were in the rear passenger seat. Separately, the defendant's vehicle was also seen on Haverhill Road and a PBSO deputy conducted a traffic stop of the defendant's vehicle. During the traffic stop of the defendant's vehicle, one of the males stated that his family was on the vessel that was trailered by Robert's vehicle.

4. A later search of the vessel revealed two adult females and four children in the cabin of the vessel. Immigration records revealed that the four males, including J.T.C., who were originally within the defendant's vehicle and the individuals discovered on the vessel that was trailered by Robert's vehicle were citizens of the United Kingdom and had no legal status in the United States. Additionally, the vessel's mounted GPS was turned on and displayed a track line from Grand Bahama Island to Lake Worth Inlet.

5. Homeland Security Investigations Special Agents later interviewed the registered owner of the vessel, and the owner stated that he sold the vessel to the defendant in exchange for $23,000.

6. Homeland Security Investigations Special Agents took a Post-*Miranda* statement from Curry. Curry stated that the defendant offered him $30,000 to smuggle aliens from the Bahamas to the United States and that Simms agreed to assist him in return for a portion of the funds from the defendant. He furthered stated that he travelled with Simms from Phil Foster Park to the Bahamas where they picked up the aliens and thereafter returned to Phil Foster Park with the aliens aboard the vessel.

7. A review of Curry's cellular phone showed communications between Curry and the defendant during timeframe that Curry and Simms were travelling to and from the Bahamas. At 3:09 p.m., the defendant sent Curry a message that stated, "The guy at castaway is wearing a white

hat." Castaways Resort and Suites is a hotel in Freeport, Grand Bahama Island commonly referred to as "Castaways." At 3:09 p.m., Curry responded "Ok." At 3:09 p.m., Curry received a message from the defendant which stated, "The others are in the room waiting." At 3:45 p.m., the defendant messaged Curry and stated, "Lmk when u pulling out." At 4:15 p.m., Curry sent the defendant a message stating, "Just pull out."

8. All events occurring in within the Special Maritime and Territorial Jurisdiction of the United States and elsewhere, in Palm Beach County, in the Southern District of Florida.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

4/1/2025
DATE

By: _____
BRIAN D. RALSTON
ASSISTANT UNITED STATES ATTORNEY

3/19/25
DATE

By: _____
JEFFREY GARLAND
COUNSEL FOR DEFENDANT

3/19/25
DATE

By: _____
PALLAVI ANN LEMON
DEFENDANT